UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MARVIN MINAWAR,

            Plaintiff,

  -against-

THE CITY OF NEW YORK and
CHRISTOPHER GREINER,

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

       Plaintiff Marvin Minawar, by his attorneys, Lumer & Neville, as and for his Complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

       1.    At all times hereinafter mentioned, plaintiff, Marvin Minawar, was an adult male resident of Kings County, within the State of New York.

       2.    At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

       3.    At all relevant times hereinafter mentioned, defendant Christopher Greiner, Shield No.: 1425, was employed by the City of New York as a member of the NYPD and was assigned to the NYPD's Narcotics Bureau Brooklyn South ("NBBS"). Greiner is sued in both her official and individual capacities.

       4.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 1367, and 42 U.S.C. § 1983.

5. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

6. On June 1, 2012, at or about 4:30 P.M., plaintiff was present inside a pizzeria at or near the intersection of Court and Degraw Streets, in Kings County, New York.

7. While at this location, plaintiff was approached by the defendant, along with two other members of the NYPD. Plaintiff had not been engaged in any criminal conduct, nor was he engaged in any conduct that could reasonably be viewed as criminal.

8. Plaintiff was searched. Although he was not in possession of any contraband or engaged in any criminal or unlawful conduct, plaintiff was handcuffed and taken into the defendants' custody.

9. Plaintiff was transported to a local area police precinct station house in Kings County where his arrest was processed.

10. While plaintiff was at the station house, the arresting officer, NYPD Det. Alberto Angilletta, drafted arrest paperwork under arrest number K12653982.

11. Plaintiff was later transported to Kings County Central Booking, where he was imprisoned for many more hours.

12. While plaintiff was in defendants' custody, Angilletta drafted paperwork concerning plaintiff's arrest. Defendant Greiner expressly told Angilletta that Greiner had observed plaintiff hand another person, identified as Gilbert Nieves, heroin, in exchange for cash. Angilletta memorialized this statement by Greiner in the arrest paperwork.

13. This claim by Greiner was materially false, as plaintiff had not engaged in any hand to hand transactions with Nieves, much less one involving narcotics, and Greiner had to know that these charges were fabricated at the time he advised Angilletta of his factual allegations.

14. Greiner knew and understood that Angilletta would memorialize these false statements of fact and forward them to the Kings County District Attorney ("KCDA") in order to justify the arrest and to persuade the KCDA to commence the plaintiff's criminal prosecution.

15. Greiner knew and understood that the KCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of his statements to Angilletta and was assuming that all of the Greiner's factual statements were truthful in all material respects.

16. At no time did there exist sufficient cause to seize or arrest the plaintiff, nor could the defendants have reasonably believed that such cause existed.

17. The arrest and imprisonment of plaintiff was objectively unreasonable.

18. As a result of the communications made by Angilletta on behalf of

Greiner, the KCDA initiated criminal process against plaintiff, who was arraigned and prosecuted under docket number 2012KN045121.

19. Plaintiff was prosecuted for more than four months until, on October 22, 2012, the KCDA moved to dismiss the criminal action and the prosecution was terminated in plaintiff's favor.

20. At no time did Greiner take any steps to mitigate, prevent, or otherwise limit the heretofore misconduct he had engaged in against plaintiff or to limit the harm he caused plaintiff through this misconduct by making any corrective statements or otherwise intervening in the prosecution of the plaintiff.

21. Greiner's actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

22. More precisely, under this policy or plan, officers within the Narcotics Division generally, and NBBS in particular, would knowingly make arrests of individuals regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing the individual(s) being arrested in actual or constructive possession of the narcotics in question.

23. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

24. In addition, members of the Narcotics Division are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made,

search warrants secured, and other, similar criteria. Thus, members of the Narcotics Division routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

25. The NYPD generally, and NBBS in particular, tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, members of the Narcotics Division are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

26. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

27. That at all times relevant herein, Greiner was on duty and acting within the scope of his employment, and his acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

28. Plaintiff repeats the allegations contained in paragraphs "1" through "27" above as though stated fully herein.

29. Defendant Greiner willfully and intentionally seized, searched, detained, and arrested plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

30. Defendant Greiner caused plaintiff to be maliciously prosecuted by bringing about his prosecution based on false and manufactured evidence, which was presented to the KCDA for the purpose of initiating and maintaining plaintiff's prosecution.

31. By so doing, Greiner subjected the plaintiff to false arrest and imprisonment, malicious prosecution, and the denial of a fair trial through the fabrication of evidence, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

32. By reason thereof, Greiner has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

33. Plaintiff repeats the allegations contained in paragraphs "1" through "32" above as though stated fully herein.

34. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-

CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

35. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

36. Notwithstanding its awareness of the Narcotic Division's pattern of making unlawful arrests and then falsifying their records and testimony to justify and cover up this conduct, the NYPD made no effort to curb, limit, or otherwise prevent this misconduct from continuing.

37. Thus, the City of New York created, approved or condoned the

practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

38. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

39. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

40. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that it was deliberately indifferent to the risk that the inadequate level of supervision would lead generally to the violation of individuals' constitutional rights and caused this violation of plaintiff's rights.

41. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

i. on the first cause of action, actual and punitive damages in an amount to be determined at trial;

ii. on the second cause of action, actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
      March 21, 2014

                        LUMER & NEVILLE
                        Attorneys for Plaintiff

By: /s/ Michael Lumer

Michael Lumer, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060